RENEE M. HARDER, APPELLANT AND CROSS-APPELLEE, V. RONALD W. HARDER, APPELLEE AND CROSS-APPELLANT.

524 N.W.2d 325

Filed December 2, 1994.   No. S-93-714.

Mary Lee Skaff for appellant.

Debra Margrave for appellee.

HASTINGS, C.J., WHITE, CAPORALE, FAHRNBRUCH, LANPHIER, and WRIGHT, JJ., and BOSLAUGH, J., Retired.

WRIGHT, J.

Renee M. Harder seeks further review of the decision of the Nebraska Court of Appeals which affirmed the order of the

Douglas County District Court denying her application for consent to move to Arizona with her son, Garrett W. Harder.

## SCOPE OF REVIEW

In the absence of an abuse of discretion, a trial court's decision bearing upon the custody of minor children will not be disturbed on appeal. *Demerath v. Demerath,* 233 Neb. 222, 444 N.W.2d 325 (1989).

Generally, before a court will permit the removal of a minor child from the jurisdiction, the custodial parent must satisfy the court that there is a legitimate reason for leaving the state and that it is in the minor child's best interests to continue to live with that parent. *Id.*

## FACTS

Renee and Ronald W. Harder were married on October 24, 1983. Renee filed a petition for dissolution of marriage in 1989. A temporary order granting custody of their son, Garrett, born March 29, 1987, was entered in favor of Renee. The decree of dissolution awarded custody of Garrett to Renee, with reasonable rights of visitation for Ronald, but no specific visitation schedule was provided.

After the divorce, Renee and her minor son began living with James Melichar. In 1993, Melichar sold his underground sprinkler business, which he had operated for 18 years, and planned to move to Arizona and begin a sprinkler business there, where he could work year-round.

On March 18, 1993, Ronald filed an application for permanent custody of Garrett. Ronald remarried on March 20. On April 22, Renee filed an application for consent to move to Arizona with Garrett. Renee and Melichar were married in Arizona on May 5. At the time of the hearing on the applications, Melichar had obtained a job as a foreman for Blooming Desert Landscape and Renee had obtained a job as an assistant to a real estate broker in Arizona. They had leased a house and had located a school and a day-care center for Garrett.

The guardian ad litem's written report to the court concluded that both parties were fit and proper persons to have custody of Garrett. The guardian noted that Renee had been Garrett's

primary caregiver and had done a good job in caring for Garrett's physical needs. The guardian also found that Garrett was a well-adjusted child and that Garrett had a close emotional bond with Renee. Each of the parties informed the guardian that the other party was a good parent. The guardian found that Ronald had exercised regular visitation, telephoned Garrett two or three times per week, visited Garrett's school on numerous occasions, and attended a parent-teacher conference. The guardian reported that Ronald and Garrett shared a close relationship and that Garrett said he enjoyed spending time with his father.

The guardian determined that Renee's plan to move to Arizona was not designed to interfere with Ronald's visitation, but, rather, to be with her new husband. The guardian believed, however, that Renee failed to take into consideration the effect the move would have on Ronald's right to visit Garrett, as well as the child's right to continue his close-knit relationship with his father. The guardian said that the purpose of Renee's marriage to Melichar was to enhance the litigation, because she was not married at the time she planned to move to Arizona and because she told Ronald, when she informed him of her intent to move to Arizona, that she was not ready to marry Melichar. The guardian found it significant that Renee did not have a wedding ring 22 days after her marriage to Melichar and that Renee did not want Garrett in attendance at the marriage ceremony in Arizona. The guardian noted that Melichar found employment in Arizona after Renee's application for consent to move was filed and that Renee and Garrett did not have any extended family there. Both grandparents lived in Omaha, and Garrett had a close relationship with his maternal grandmother.

The guardian concluded that due to Garrett's age and his emotional bond with Renee, who at all times had been the primary caregiver, it would be in Garrett's best interests to remain in Renee's custody. However, the guardian determined that it was in Garrett's best interests that he also have an opportunity to maintain his close relationship with Ronald. The guardian stated that if Renee were allowed to move to Arizona, Garrett's relationship with his father would be significantly hindered.

The district court found that the desirability of having Garrett reside in proximity to Ronald and his extended family was superior to any reason that Renee might have for wanting to move to Arizona and that such a move would clearly prevent Ronald from maintaining a close paternal relationship with Garrett. The court found that it was in Garrett's best interests that he remain in Nebraska so that Ronald could continue to be a constant and positive force in Garrett's life. Renee was allowed to retain custody, provided that she remain in Nebraska. Renee appealed to the Court of Appeals, and Ronald cross-appealed. The Court of Appeals affirmed the district court's decision in all respects.

## ASSIGNMENTS OF ERROR

On appeal to the Court of Appeals, Renee made seven assignments of error which can be condensed to assert that the district court erred in not permitting her to move to Arizona with her minor son. Renee's petition for further review asserts that the Court of Appeals erred in not finding that remarriage was a legitimate reason for removal and erred in finding that the child's best interests would not be met if Renee joined her new husband in Arizona. Ronald incorporated his cross-appeal into his brief on petition for further review, and he asserts that custody of Garrett should be awarded to him.

## ANALYSIS

The issue in this case is whether the district court abused its discretion in refusing to allow Renee to remove Garrett from Nebraska. We have held that the court generally will permit the removal of a minor child from the jurisdiction if the custodial parent satisfies the court that there is a legitimate reason for leaving the state and that it is in the minor child's best interests to continue to live with that parent. *Demerath v. Demerath*, 233 Neb. 222, 444 N.W.2d 325 (1989).

By the time of the hearing on the applications, both Renee and Melichar had obtained jobs in Arizona. Renee's job would pay $800 to $850 per month. Melichar testified that his base salary in Arizona would be $24,000, plus commissions, and he was told that he could make $50,000 per year. Melichar had friends and an aunt who lived in Arizona. Melichar and Renee

had leased a three-bedroom ranch-style home, located on 1 acre, which had a fenced-in backyard. Renee had visited the school which Garrett would attend if they were permitted to move. Renee told the guardian ad litem that she wanted to move to Arizona to be with her husband, but that she would remain in Nebraska, if necessary, to retain custody of Garrett. Garrett told the court that he liked living with his mother and Melichar and that he would rather go to Arizona than stay in Omaha.

The Court of Appeals affirmed the district court's finding that it was more desirable for Garrett to remain in proximity to Ronald and his extended family than to be permitted to move to Arizona. In a memorandum opinion, the court stated:

> At a time when many fathers are purposely absent from their children's lives, Ronald has obviously made a sincere and concerted effort to contribute to his son's well-being. Consequently it is in Garrett's best interest that he stay in Nebraska so that Ronald can continue to be a constant and positive force in his life.

Two factors must be considered regarding the removal of a child from this state: whether the custodial parent has a legitimate reason for leaving the state and whether it is in the minor child's best interests to continue to live with that parent. See *Demerath v. Demerath, supra*. In *Demerath*, the mother had remarried, and she and her new husband wanted to move to another state for business reasons. We noted:

> " 'As a general rule, all other circumstances being equal, legitimate career changes of the custodial parent, whether they be job-related or matrimonial in nature, will support an application for changing the residence of a child placed in that parent's custody.' . . . If there is a legitimate reason for the custodial parent's decision to leave the jurisdiction, the minor child will be allowed to accompany the custodial parent if the court finds it to be in the best interests of the child to continue to live with that parent. . . . Custody is not to be interpreted as a sentence to immobility."

*Demerath v. Demerath*, 233 Neb. 222, 222-23, 444 N.W.2d 325, 325-26 (1989).

In *Boll v. Boll*, 219 Neb. 486, 363 N.W.2d 542 (1985), we held

that the trial court erred in refusing to allow a child to be moved to Tennessee with the mother, who had received training to work as an EEG technologist and had obtained a job in that field in the other jurisdiction. We approved of the move because employment as an EEG technologist was a considerable improvement over unemployment or work as a waitress and because the mother could not find a position in her field in Nebraska. "Obtaining employment when unemployed and finding employment with a substantial opportunity for increased earnings are reasonable and legitimate reasons for a custodial parent to move to another jurisdiction." *Id.* at 490, 363 N.W.2d at 545.

In *Boll*, the father argued that the child's community ties and extended family in the Omaha area were adequate reasons to deny the application to remove the child. We stated:

> Although we realize community ties are important factors to be considered, they do not mandate prohibiting a custodial parent from relocating for a legitimate reason. . . . "We do not feel that an award of custody to a parent should be interpreted as a sentence to immobilization." We will not place a custodial parent in the position of deciding between custody of one's child and a more successful career.

(Citation omitted.) *Id.* See, also, *State ex rel. Reitz v. Ringer*, 244 Neb. 976, 510 N.W.2d 294 (1994).

We found no abuse of discretion in the trial court's granting permission for the mother, the custodial parent, to remove the minor children to Sioux Falls, South Dakota, in *Jafari v. Jafari*, 204 Neb. 622, 284 N.W.2d 554 (1979). The mother accepted a job in South Dakota, supervising a training program. The new job included a small increase in salary and increased potential for career and salary advancement. The father argued that he would be able to provide guidance and assistance if the children remained in Omaha.

In *Maack v. Maack*, 223 Neb. 342, 389 N.W.2d 318 (1986), the mother was allowed to retain custody of two minor children and to remove them from the state. Although the record indicated that the mother was a fit parent, had a loving relationship with the children, and had a legitimate reason to

leave the state, the father argued that the children had close ties to their rural Nebraska community. We stated that community ties do not always preclude a custodial parent from relocating to another state. The mother had remarried and resided outside Nebraska with her second husband. The district court found that allowing the mother to retain custody and to remove the children to the new environment was consistent with the best interests of the children, and we affirmed.

In *Gerber v. Gerber*, 225 Neb. 611, 619, 407 N.W.2d 497, 503 (1987), we stated:

> In proceedings to dissolve a marriage, placing a child in the custody of a parent does not prevent the custodial parent's departure from the jurisdiction at the risk of losing child custody. . . .
>
> Before a court will permit removal of a child from the jurisdiction, generally, a custodial parent must establish that such removal is in the best interests of the child and must demonstrate that departure from the jurisdiction is the reasonably necessary result of the custodial parent's occupation, a factually supported and reasonable expectation of improvement in the career or occupation of the custodial parent, or required by the custodial parent's remarriage.

(Citations omitted.)

In *Hicks v. Hicks*, 223 Neb. 189, 388 N.W.2d 510 (1986), we reversed the trial court's transfer of custody to the mother and found that the father should have been allowed to remove the child from Nebraska. We held: "The noncustodial parent's visitation rights and the minor child's community ties are important factors to be considered. But neither community ties nor a reduction in visitation necessarily mandates prohibiting a custodial parent from relocating for a legitimate reason." *Id.* at 196, 388 N.W.2d at 515.

In the present case, the district court's order forces Renee to choose between her child and her new husband. The court denied Ronald's request for a change of custody, but also denied Renee's request that she be allowed to take Garrett with her to Arizona, where her new husband had obtained a job as a foreman for a landscape company and she had obtained

employment in a real estate office.

It is not disputed that Renee's main objective in seeking the court's permission to move Garrett to Arizona was to accompany her new husband. The district court found that it was in Garrett's best interests to remain with Renee, and we agree. However, we find that Renee had a legitimate reason to leave Nebraska. It follows, then, that Garrett should be allowed to leave the state with Renee. As we have stated, a custodial parent will not be placed in a position of deciding between custody of a child and a different career, whether it is job-related or matrimonial. *Korf v. Korf*, 221 Neb. 484, 378 N.W.2d 173 (1985).

Renee's remarriage and her new husband's move to Arizona, where he can work in his chosen field throughout the year, create legitimate reasons for Renee to move, regardless of the fact that she and her new husband obtained jobs and were married after she filed her application for permission to move Garrett. The district court abused its discretion in refusing to grant the application, and the Court of Appeals erred in affirming the district court's order. Our de novo review results in findings that the application for permission to remove Garrett from the jurisdiction should have been granted and that the district court should have entered an order permitting Renee to move to Arizona with Garrett. In light of these findings, Ronald's request for a change in custody is denied.

## CONCLUSION

The judgment of the Court of Appeals is reversed, and the cause is remanded to that court with directions that it reverse the order of the district court and direct that the district court enter an order permitting Renee to move to Arizona with Garrett.

REVERSED AND REMANDED WITH DIRECTIONS.