BRENDA J. SULLIVAN, APPELLANT, V. STEVEN J. SULLIVAN, APPELLEE.

544 N.W.2d 354

Filed March 8, 1996. No. S-95-268.

Mary Rauth Winner and Elizabeth Stuht Borchers, P.C., of Marks Clare & Richards, for appellant.

Christopher A. Vacanti and Timothy D. Mikulicz, of Cohen, Vacanti & Higgins, for appellee.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

LANPHIER, J.

In May 1994, the marriage of Steven J. Sullivan and Brenda J. Sullivan was dissolved. Custody of the Sullivans' two teenage children was split between the parties, and visitation was ordered in accordance with a settlement agreement drawn by the

parties. Custody of 17–year–old Andrew was placed with Steven Sullivan and custody of 13–year–old Amber was placed with Brenda Sullivan. In the months following the divorce decree, problems developed in the visitation schedule between Steven Sullivan and Amber. During a 6–week period in July, only one of three scheduled visitations actually took place. In September 1994, Steven Sullivan filed an application for a change, requesting custody of Amber. The district court for Sarpy County ordered the change of custody after a hearing in February 1995. The court held that Brenda Sullivan had failed to encourage Amber to participate in visitation with her father and had exhibited a surly and vindictive demeanor during the hearing. Therefore, the court ordered that Amber be placed in the custody of her father and that Brenda Sullivan pay child support. Brenda Sullivan timely appealed to the Nebraska Court of Appeals, and we removed the matter to our docket. We hold that the district court abused its discretion in holding that a material change in circumstances had occurred since the entry of the decree and that it would be in the best interests of the child to order a change in custody. Accordingly, the district court orders are reversed.

## BACKGROUND

Appellee Steven Sullivan and appellant Brenda Sullivan were married June 15, 1973, in Greenfield, Iowa. The Sullivans have two children: Andrew was born December 29, 1977, and Amber was born March 14, 1981.

On May 16, 1994, the district court for Sarpy County entered a decree of dissolution of the marriage of the parties. At the time of the divorce, the parties resided in Gretna.

The court found both parents to be fit and proper persons to be awarded the care, custody, and control of the minor children. Brenda Sullivan was awarded the custody of Amber, and Steven Sullivan was awarded the custody of Andrew.

The court adopted the parties' settlement agreement regarding visitation. The decree ordered that Steven Sullivan was entitled to visitation with Amber every other weekend and alternating holidays. Brenda Sullivan's visitation schedule with Andrew was fixed at a minimum of one Sunday afternoon per

month, in consideration of Andrew's age, work schedule, and other activities.

Based upon the parties' gross income and pursuant to the Nebraska Child Support Guidelines, Steven Sullivan was ordered to pay child support in the amount of $57 per month. Brenda Sullivan was ordered to maintain health and accident insurance coverage for the children so long as the same was offered as a benefit of her employment.

The decree permitted Steven Sullivan to relocate Andrew to Greenfield or Des Moines, Iowa. After the decree was entered, Steven Sullivan and Andrew moved to Greenfield, where they lived with Steven Sullivan's girl friend, Cleta, and her 8-year-old son. Steven Sullivan married Cleta on January 1, 1995.

After Steven Sullivan and Andrew moved out of the family residence in Gretna, Brenda Sullivan invited a friend and her 10-year-old daughter to move in. The friend, identified in the record as Trisha, helped pay the rent.

Brenda Sullivan held full-time employment as a secretary. From approximately June to October 1994, she worked as a telemarketer on weeknights and on occasional weekend days. After school, Amber stayed with friends or remained at home alone or with Trisha.

In July 1994, 2 months after the decree, problems developed with Amber's visitation schedule. Amber was scheduled to visit her father three of the five weekends in July, including the Fourth of July. However, Amber had spent the week prior to July 4 with her maternal grandmother, and Amber accepted her grandmother's invitation to remain with her on July 4. Steven Sullivan testified that he refused to tell Amber that she must leave her grandmother and come with him.

Amber missed another scheduled visitation in July because she wanted to go to a birthday party for her mother's boyfriend, Mike Fontana. Amber testified that her mother never refused to let her visit her father and that if she "wanted to go see him I could, but I could stay if I didn't want to go or something."

On September 27, 1994, Steven Sullivan filed an application for modification of the decree. He alleged that since the time of the decree in May, there had been a material change in

circumstances which warranted modification of the custody arrangement. The alleged changes in circumstances were:

    a. [Brenda Sullivan] has repeatedly failed to comply with the visitation schedule set forth in said Decree, going so far as to allow [Steven Sullivan] only one weekend visitation with Amber J. Sullivan during a six week period.

    b. [Brenda Sullivan] is employed full time during the normal work week, and has taken on a "second" job which requires her to be away from home in the evenings and on weekends. [Brenda Sullivan's] work schedule leaves no time for her to spend in the care and upbringing of Amber J. Sullivan.

    c. When [Brenda Sullivan] is not working, she is spending time (and the night) with her boyfriend rather than with Amber J. Sullivan.

    d. [Brenda Sullivan] has a house guest that resides in the family residence. This house guest is left with the primary responsibility of raising Amber J. Sullivan because of [Brenda Sullivan's] work schedule and boyfriend. The house guest is a person with questionable values and character.

    e. Amber J. Sullivan demonstrates a deteriorating attitude. She has become "smart mouthed" and uninvolved in activities and friendships that were important to her in the past.

    f. [Brenda Sullivan] has shown a lack of concern in Amber J. Sullivan's health and welfare by failing to schedule doctor and dentist appointments that were necessary.

    g. [Steven Sullivan] has suffered a significant change in income, and is currently earning substantially less [than] at the time the above–referenced Decree was entered.

Steven Sullivan requested that he be awarded the custody of Amber and that the parties' child support obligations be determined anew.

The record indicates that Steven Sullivan's application for modification of custody was not the only legal action between the parties during the 4–month period following their divorce.

The district court's journal entries indicate that a motion for order to show cause was received and signed on June 7, 1994. On June 17, reciprocal contempt proceedings involving the payment of money and distribution of assets pursuant to the property agreement were instituted.

After one continuance, a hearing on the application for modification was conducted on February 7, 1995. Since Steven Sullivan's application had been filed, several changes occurred in Brenda Sullivan's household and life. Trisha and her daughter had moved out and Fontana and his two teenage sons had moved in. Brenda Sullivan had ceased working as a telemarketer.

Steven Sullivan, Brenda Sullivan, Andrew, and Amber testified at the February 7 hearing. At the hearing, Amber was questioned regarding her preferences. She stated that she preferred to live with her mother, but that she would not be sad if she lived with her father. During cross-examination, Steven Sullivan admitted that Amber had never expressed a desire to live with him in the past.

At the hearing, evidence was adduced regarding events subsequent to the filing of the application for a change in custody. The record indicates that a problem with visitation arose over the Thanksgiving weekend. Amber had spent some time with her father and brother, but she requested and received her father's permission to attend a family dinner at her maternal grandmother's home on Saturday. Later that day, Amber called from her grandmother's home and asked if she could remain there overnight. Steven Sullivan asked to speak to the grandmother and asked her to refrain from interfering with the visitation schedule in the future. Steven Sullivan then permitted Amber to spend the night with her grandmother.

Steven Sullivan testified that he had repeatedly asked Brenda Sullivan to take Amber to the dentist and the eye doctor, but that she had refused to discuss the matter with him. Steven Sullivan testified that Brenda Sullivan threatened to have Amber's teeth pulled out so that he would not ask her any more questions about the dentist. Brenda Sullivan admitted that she resisted discussing Amber's medical checkups with Steven Sullivan, because he used every opportunity to verbally abuse her.

At the conclusion of the modification hearing, the district court announced its findings from the bench. The court stated it would give due weight to Amber's stated desire to remain with her mother. The presence of Fontana and his sons in Brenda Sullivan's home was not found to be a concern.

However, the court found that the visitation between Amber and her father was not working. The court scolded Brenda Sullivan, noting that it expected more from a custodial parent with respect to recognizing the other parent's right of visitation than what she had provided. The court stated that Brenda Sullivan should not have allowed Amber to decide when she wanted to visit her father, but should have enforced the visitation schedule.

Speaking to Brenda Sullivan, the district court stated that appellate courts

> indicate that the demeanor of the witness is something that is peculiarly entrusted to the trial court, that is we are the ones, the trial judge is the one that gets to see the witnesses and they are sworn and testify and how rational and believable their explanation of their evidence is, and I have got to say that in those areas, in the demeanor and credibility of the witnesses, that Mr. Sullivan is head and shoulders above where you are. The demeanor that I get from you is a demeanor of, maybe I am not using the right word, vindictiveness or surliness, and I guess I recognize that people that get divorced are unhappy or they wouldn't get divorced, but to me what comes across is that the bitterness is just permeating your life, and I think that's — if something is not done it's going to eventually get on down to Amber. On the flip side of that I am sure you could have done more, but the demeanor of Mr. Sullivan, as he has testified, leads me to believe, at least he has made an honest effort, certainly more than a fifty percent effort, to resolve this bitterness that's evidently existing . . . .

The court concluded that Brenda Sullivan was not an unfit parent, but that Amber's best interests required a transfer of custody to her father. The transfer of custody was ordered to take place after the end of the school year, on June 1, 1995. The

court then recalculated child support and ordered Brenda Sullivan to pay $365 per month child support. Although the court stated it was concerned about reasonable visitation, it did not think it needed to specify a schedule. However, the court did order that visitation include, at the minimum, alternating holidays, birthdays, and Mother's Day and that the children should be encouraged to spend 3 to 4 weeks during the summer with their mother. Finally, the court ordered that both parties pay their own attorney fees. On June 9, 1995, Brenda Sullivan's motion for an order staying the change of custody was denied.

## ASSIGNMENTS OF ERROR

Brenda Sullivan assigns as error the district court order awarding custody of Amber to her father in the absence of a material change of circumstances since the entry of the divorce decree and against Amber's wishes; the court's calculation of the amount of child support payable in that no deduction for health insurance covering the children was made; and the court's failure to award Brenda Sullivan a tax dependency exemption.

## STANDARD OF REVIEW

Determinations as to custody in dissolution proceedings are reviewed on appeal de novo on the record, but such determinations are initially entrusted to the discretion of the trial judge and will be affirmed unless they constitute an abuse of that discretion. *Kelly v. Kelly*, 246 Neb. 55, 516 N.W.2d 612 (1994); *Hansen v. Hansen*, 240 Neb. 31, 480 N.W.2d 204 (1992). Where credible evidence is in conflict on a material issue of fact, the appellate court considers, and may give weight to, the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another. *Id*.

## ANALYSIS

Ordinarily, custody of a minor child will not be modified unless there has been a material change of circumstances showing that the custodial parent is unfit or that the best interests of the child require such action. *State ex rel. Reitz v. Ringer*, 244 Neb. 976, 510 N.W.2d 294 (1994). The burden is upon the party seeking the modification to show that there has

been a material change of circumstances. *Peterson v. Peterson,* 239 Neb. 113, 474 N.W.2d 862 (1991); *Schulze v. Schulze,* 238 Neb. 81, 469 N.W.2d 139 (1991). In the context of marital dissolutions, a material change of circumstances means the occurrence of something which, had it been known to the dissolution court at the time of the initial decree, would have persuaded the court to decree differently. *Peterson v. Peterson, supra; McDougall v. McDougall,* 236 Neb. 873, 464 N.W.2d 189 (1991).

The court expressly held that Brenda Sullivan was a fit parent. Therefore, it must be determined if it is in the best interests of the child that there be a change of custody. *Hibbard v. Hibbard,* 230 Neb. 364, 431 N.W.2d 637 (1988).

After our de novo review of the record, we accept the trial court's conclusions that Amber's visitation schedule with her father was not working as well as it could have. We agree with the court's opinion that a custodial parent should recognize the other parent's right of visitation. Finally, as the trial court stressed, an appellate court does consider and give weight to the fact that the lower court had the opportunity to observe the witnesses. Therefore, we accept the trial court's assessment of Brenda Sullivan's demeanor. However, these findings and opinions do not constitute a material change in circumstance indicating that it was in Amber's best interests that a change of custody be ordered. We find that the trial court abused its discretion in ordering the modification of custody in this case.

In *Hibbard v. Hibbard, supra,* we recognized that visitation is a key ingredient in raising children after a divorce and that it is in a child's best interests to be with his or her respective parents to the utmost. Where the custodial parent had failed to comply with visitation orders for nearly 3 years and was uncommunicative and uncooperative, we found the denial of visitation to be a material change in circumstance.

All of the events in this case, as recounted above, occurred within 9 months after the entry of the divorce decree. The record indicates that the parties had ongoing differences regarding the division of their property and the care of their children.

The trial court correctly concluded that Brenda Sullivan did less than she should have to facilitate visitation between the father and daughter. However, the visitation problems complained of appear to be caused by the need to balance the needs of a young teenager, the interests of extended family, and a lack of communication between warring parents. Further, the visitation problems are not so severe as to justify a change of custody. Steven Sullivan complains that he missed two weekends in July with his daughter and that his Thanksgiving weekend was interfered with by the maternal grandmother. In the latter instance, Steven Sullivan conceded to the arrangement, but would have Brenda Sullivan intercede to urge Amber to visit him. The visitation problems recited could have been resolved in a number of less disruptive ways than by changing custody.

Amber testified that she wished to remain with her mother. Although Amber's wishes are not controlling, they should not have been disregarded. Children are entitled to a stable home. Children are not chattels, and their custody should not be the subject of a continuous contest between divorced parents at the expense of their well-being. *Hibbard v. Hibbard, supra*; *Miller v. Miller*, 196 Neb. 146, 241 N.W.2d 666 (1976); *Goodman v. Goodman*, 180 Neb. 83, 141 N.W.2d 445 (1966).

Brenda Sullivan also assigns as error the trial court's requirement that she pay $365 per month child support. Because we reverse the district court order regarding custody, we also reverse the court order regarding child support. We order that the original visitation and child support orders stated in the divorce decree be reinstated.

Brenda Sullivan's motion for attorney fees is denied.

REVERSED.