GRACE B. AINSLIE, APPELLEE, NEILON J. AINSLIE, APPELLANT.

545 N.W.2d 90

Filed March 22, 1996. No. S–94–216.

Donald R. Witt and John W. Ballew, Jr., of Baylor, Evnen, Curtiss, Grimit & Witt, for appellant.

Virginia G. Johnson for appellee.

WHITE, C.J., CAPORALE, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

CAPORALE, J.

The respondent–appellant husband, Neilon J. Ainslie, appealed to the Nebraska Court of Appeals from the district court's February 11, 1994, dissolution decree, asserting that the district court erred in the amount and duration of the alimony it awarded him from the petitioner–appellee wife, Grace B. Ainslie, namely, the sum of $500 per month for a period of 12 months beginning January 1, 1994; $300 per month for a period of 12 months beginning January 1, 1995; and $200 per month for a period of 12 months beginning January 1, 1996. The Court of Appeals modified the alimony award so as to require the wife to pay the husband $500 per month until either she or he died or he remarried and, as so modified, affirmed the

decree of the district court. *Ainslie v. Ainslie*, 4 Neb. App. 70, 538 N.W.2d 175 (1995). The wife successfully petitioned for further review by this court; we now affirm the judgment of the Court of Appeals.

We begin by recalling that the awarding of alimony is a matter entrusted to the discretion of the trial judge and, on appeal, will be reviewed de novo on the record and affirmed in the absence of an abuse of discretion. *Thiltges v. Thiltges*, 247 Neb. 371, 527 N.W.2d 853 (1995).

The parties were married on March 26, 1954, and produced four children, all of whom had reached the age of majority at the time of the December 14, 1993, trial. During the course of their marriage, the parties moved 16 times; the wife arrived in Lincoln, Nebraska, in 1985 and the husband shortly thereafter. The parties separated on May 1, 1993.

The husband spent most of his married years working as a food service director in hospitals. After he moved to Lincoln, he found part-time employment delivering food to community centers for the elderly and also worked at a fast-food operation. After his separation from the wife, the husband worked in a fast-food operation at a resort in Wyoming where his son was the resident manager. However, that job only lasted 4 months because the resort closed down for the winter. At the time of trial, the husband was 65 years old, and his sole sources of income were Social Security benefits in the amount of $745 per month and a pension of $51 per month. His "bare-bones" expenses amount to $1,235, or $439 more than his Social Security and pension income.

The husband has undergone two surgeries for arterial sclerosis and has high blood pressure and high cholesterol. He has been taking medication for the high blood pressure, but does not take medication for the high cholesterol because it is too expensive.

The husband currently resides in an apartment which his son helped him obtain by providing him with the money for a security deposit. Prior to this, he had lived with a son in Omaha, a daughter in Kansas, and in the camper on his truck. He testified that without alimony he would be unable to continue living in his apartment. Indeed, even assuming that

the husband's expenses will remain constant throughout the remainder of his life, there is nothing to indicate that without alimony he will be able to meet them at any point in the future.

Although the Court of Appeals declares in its opinion that the wife was approximately 58 years old at the time of the trial, we cannot find anything in the record to substantiate that statement. What the record does establish, however, is that she graduated from high school in 1952. In any event, during the course of the marriage, she held a number of jobs, including babysitter, grocery store checker, typist, and medical records technician. By the time of trial, she had not worked for several years. She, too, has been in ill health, having had a hysterectomy, cataract surgery on both eyes, and two surgeries for heel spurs. In addition, she suffers from high blood pressure and high cholesterol, and has a bladder incontinence problem.

During the course of the marriage, the wife became the beneficiary of two separate trusts. The first she created in August 1985 from the approximately $200,000 she inherited from her mother. At no time were these funds deposited in an account which bore the husband's name. They were transferred directly from the estate to the trust, and the wife controls all of the distributions from that trust. She does not take all of the income that the trust produces, but, rather, receives an amount she considers adequate to live on and permits the rest to accumulate. As of June 30, 1993, the corpus of this trust was valued at $280,539.63. It produces an estimated annual income of $12,588.

The second trust was originally established by the wife's great-great-uncle. At the time of trial, the wife and her two brothers received the income that their mother originally received from this trust. The wife does not have any control over the distributions from this trust, but she receives $20,000 per year in income therefrom and has an undivided two-fifteenths interest in the corpus. Upon the death of a particular aunt, the wife will receive a distribution of her undivided two-fifteenths interest. As of June 30, 1993, the corpus of that trust was valued at $4,662,938.07, making the value of her undivided two-fifteenths interest $621,725.07.

The district court decree awarded the wife the vehicle in her possession, all personal property remaining in the marital residence except for a certain television set, and the real estate owned by the parties in Nebraska and Arkansas, subject to all indebtedness thereon. In addition to the television set, the husband was awarded his pension and the vehicle in his possession. The wife was ordered to pay the husband $7,000 for his portion of the equity in the marital residence.

The foregoing recitation of the relevant facts establishes that while the husband is impoverished and does not have enough to live on, the wife is not impoverished and has more than she needs.

Neb. Rev. Stat. § 42–365 (Reissue 1993) provides:

> When dissolution of a marriage is decreed, the court may order payment of such alimony by one party to the other . . . as may be reasonable, having regard for the circumstances of the parties, duration of the marriage, a history of the contributions to the marriage by each party, including contributions to the care and education of the children, and interruption of personal careers or educational opportunities, and the ability of the supported party to engage in gainful employment without interfering with the interests of any minor children in the custody of such party. . . .
>
> . . . The purpose of alimony is to provide for the continued maintenance or support of one party by the other when the relative economic circumstances and the other criteria enumerated in this section make it appropriate.

The next two statutory factors to consider are the duration of the marriage and the contributions to the marriage by each party, including contributions to the care and education of the children and interruption of personal careers or educational opportunities. The parties' marriage lasted almost 40 years. While the wife contends that the husband contributed nothing to the marriage, as exhibited by his alcoholism, gambling, and self–indulgent lifestyle, the record does not support such assertions. The record does show that the husband received treatment for alcoholism and Valium abuse. However, he

testified that he has not drunk since 1973 or 1974. He testified that he and his wife went on occasional trips to Las Vegas, where she played slot machines and he played poker, and that for the last 2 or 3 years he would play poker with some friends, with a "30–cent limit, half a dollar on the last card." He stated that he kept track of his winnings and losses at these poker games for a year, and the net difference between wins and losses was $1.

What is apparent from the record is that the parties raised four children, all of whom graduated from college. In addition, except for the period of time the husband underwent treatment in 1976, both parties were, until they moved to Lincoln, either employed or seeking employment. The wife admitted that the money the husband earned was used to pay the rent, mortgage, and life and medical insurance, and for entertainment and the vehicles. The record simply does not support the wife's claim that the husband contributed nothing to the marriage.

The fourth consideration is the ability of the supported party to engage in gainful employment. At the time of trial, the husband was at the typical age of retirement. He is now at least 67. His primary focus of employment has been in food service, but he testified that his most recent employment in the fast–food operation in Wyoming was too strenuous. Thus, the husband's ability to engage in gainful employment at this time in his life is limited, at best.

In addition to the specific criteria listed in § 42–365, a court is to consider the income and earning capacity of each party, as well as the general equities of each situation. *Kelly v. Kelly*, 246 Neb. 55, 516 N.W.2d 612 (1994); *Gale v. Gale*, 224 Neb. 803, 401 N.W.2d 501 (1987); *Taylor v. Taylor*, 222 Neb. 721, 386 N.W.2d 851 (1986). Although the wife asserts in her brief that she "possesses no earning capacity which warrants an order that she pay alimony to [the husband]," brief for appellee at 17, she nevertheless receives income from two separate trusts: one provides her $20,000 per year and the other generates over $12,000 per year. While the amount of income generated from the two trusts is not enormous, the disparity in income between her and the husband is great. "Disparity in income or potential

income may partially justify an award of alimony." *Thiltges v. Thiltges*, 247 Neb. 371, 383, 527 N.W.2d 853, 861 (1995).

The wife argues, however, that as the two trusts are nonmarital property, they cannot be taken into consideration as a basis for an award of alimony. She is wrong. In *Hefti v. Hefti*, 166 Neb. 181, 184, 88 N.W.2d 231, 233 (1958), we wrote:

> "In entering a decree for alimony, the court may take into account all of the property owned by the parties at the time of entering the decree, whether accumulated by their joint efforts or acquired by inheritance, and make such award as is proper under all the circumstances disclosed by the record."

Accordingly, the wife's two trust funds, while not subject to division in a property settlement, may properly be taken into account when determining alimony.

The ultimate test for determining correctness in the amount of alimony is reasonableness. *Thiltges, supra*; *Kelly, supra*; *Reichert v. Reichert*, 246 Neb. 31, 516 N.W.2d 600 (1994). Under the circumstances, the alimony award by the district court was less than reasonable and an abuse of judicial discretion, which exists when the reasoning or rulings of a trial judge are clearly untenable such as to unfairly deprive a litigant of a substantial right and a just result. See *Adrian v. Adrian, ante* p. 53, 541 N.W.2d 388 (1995).

The judgment of the Court of Appeals is correct.

AFFIRMED.

FAHRNBRUCH, J., participating on briefs.