JANET KAE HICKS, NOW JANET KAE SCHOECH, APPELLEE, V.
CHARLES K. HICKS III, APPELLANT.
388 N.W.2d 510
Filed June 13, 1986. No. 85-790.

Michael McCormack of McCormack, Cooney, Mooney, Hillman & Pirtle, for appellant.

James E. Case of Case, Reinsch & Slattery, P.C., for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

PER CURIAM.

The respondent, Charles K. Hicks III, has appealed from the order of the district court modifying the parties' decree of dissolution by transferring custody of their minor child, Leigh Anne, to the petitioner, Janet Kae Hicks (now Janet Schoech).

The decree dissolving the parties' December 1972 marriage was entered on August 13, 1982. The decree awarded custody of Leigh Anne, born June 27, 1979, to the respondent. The petitioner was granted "liberal" visitation which was to include

at least every other weekend, a 1-month period during the summer, and a division of holidays as agreed upon by the parties. The judgment was affirmed in *Hicks v. Hicks*, 214 Neb. 588, 334 N.W.2d 807 (1983).

On April 11, 1985, the respondent filed a petition to modify the decree to allow removal of the minor child from the jurisdiction because the respondent had been hired as a system manager by AT&T Bell Laboratories in North Andover, Massachusetts. The respondent, a computer expert, testified that because of the financial instability of his previous employer, the Federal Land Bank of Omaha, he began looking for new jobs in January of 1985. Because he considered Bell Labs to be a leader in research and development and in transmission, communications, and computer systems, the respondent accepted the AT&T offer even though it meant a $2,200 reduction in his $41,400 annual salary. He viewed the job as a career opportunity and felt honored to be considered for the position.

On May 8, 1985, upon the stipulation of the parties, the trial court entered an order allowing the respondent to temporarily remove the child to Derry, New Hampshire. On the same date, the petitioner filed an answer and cross-petition seeking modification of the original decree to transfer custody of the minor child to her. In the cross-petition she alleged that a transfer of custody would be in the child's best interests because

a. Almost all of the minor child's maternal and paternal relatives live in the Plattsmouth/Omaha area.

b. The Petitioner is now married and has adequate comfortable living arrangements in the Plattsmouth/Omaha area for the minor child.

c. The minor child is used to the Nebraska climate and a Nebraska standard of living and not the standard of living found in the area of New Hampshire and/or Massachusetts.

d. That the Respondent and his present wife are expecting the birth of a child in the near future.

At the beginning of the trial on August 19, 1985, the parties stipulated:

MR. McCORMACK: In other words if the Judge finds

the custody remains with Mr. Hicks the Judge would enter an order allowing removal of the child from the jurisdiction.

MR. CASE: That's correct.

MR. McCORMACK: So stipulated.

THE COURT: All right. You may proceed and call your first witness.

MR. McCORMACK: I believe the cross-petition — my petition is answered by the stipulation, Your Honor.

THE COURT: All right.

MR. CASE: I agree. That's part of our stipulation, that we will go forward with the evidence, there being really no need for the respondent to go forward with his original petition.

THE COURT: I understand.

After hearing the evidence the trial court, on August 29, 1985, modified the decree by transferring custody of Leigh Anne to the petitioner. The trial court found that the respondent's evidence did not show a more successful career opportunity in the Andover area; that the move to New Hampshire would effectively eliminate regular visitation by petitioner and her family; that there was no showing of a substantial opportunity for increased earnings or enhanced opportunities in the respondent's field of employment; and that it would not be in the child's best interests to move with the respondent to New Hampshire. The respondent's motion to vacate the court's order of modification or, in the alternative, grant a new trial was denied. On or about October 1, 1985, custody of the minor child was transferred to the petitioner.

The respondent contends that the trial court erred (1) in finding that the respondent showed no evidence of a substantial opportunity for increased earnings or enhanced opportunities in his field of employment; (2) in failing to find a material change of circumstances prior to its determination of what was in the best interests of the child; and (3) in finding that it was not in the child's best interests to allow the respondent to remove the child from the jurisdiction and in modifying the decree to transfer custody to the petitioner.

We consider first the custody issue.

In custody matters we review the record de novo, and absent an abuse of discretion, the judgment of the trial court will not be disturbed on appeal. Where the evidence is in conflict, we give weight to the fact that the trial court had the opportunity to see and hear the witnesses and accepted one version of the facts over another. See, *Vanderzee v. Vanderzee*, 221 Neb. 738, 380 N.W.2d 310 (1986); *Riddle v. Riddle*, 221 Neb. 109, 375 N.W.2d 143 (1985); *Parsons v. Parsons*, 219 Neb. 736, 365 N.W.2d 841 (1985).

Because custody disputes in dissolution cases should not become "running gun battles," this court has determined "that a decree fixing custody of minor children will not be modified unless there has been a change of circumstances [following entry of the decree] indicating that the person having custody is unfit for that purpose or that the best interests of the children require such action." *Hoschar v. Hoschar*, 220 Neb. 913, 915, 374 N.W.2d 64, 66 (1985). The party seeking modification bears the burden of showing a material change of circumstances affecting the best interests of the child. *Hoschar, supra.*

As further stated in *Hoschar, supra* at 915, 374 N.W.2d at 66:
> [B]y material change of circumstances we mean that the evidence must show that something has occurred, which if the trial court had been aware of the existence of these circumstances initially, the trial court in the best interests of the children would have granted their custody to the other parent.

In the present case the trial court made no finding of a material change of circumstances in transferring custody to the petitioner. The question then becomes whether upon de novo review we conclude that the record shows a material change in circumstances. We conclude that it does not.

The parties agree that the respondent's move to the New Hampshire/Massachusetts area, by itself, did not constitute a material change of circumstances. Such a move, when considered in conjunction with other evidence, may amount to a material change. See *Parsons v. Parsons, supra.*

The trial court found specifically there was no evidence of unfitness on the part of either parent. The record supports that finding. The petitioner maintains, nevertheless, that there were

changes of circumstances apart from the move which required modification of the decree in the best interests of the child. Included among these alleged changes were increasing restrictions by the respondent on the frequency of the petitioner's exercise of her right to liberal visitation; effective elimination of the petitioner's rights to liberal visitation by the respondent's move to the east coast; use of inappropriate value judgments by the respondent in the minor child's presence; increased stability in the petitioner's lifestyle and ability to provide for the minor child; and frequent moves by the respondent, suggesting that the minor child would be denied a consistent home environment by leaving custody in the respondent.

Considering these allegations in turn, we note that from October 1982 until the following summer, the petitioner exercised her visitation rights by seeing Leigh Anne on the average of 5 out of 7 days per week, in addition to every other weekend. At that time the child was attending a preschool where the petitioner worked two mornings per week.

In the fall of 1983 the respondent placed the child in a different preschool. As a result, up until the summer of 1984, the petitioner saw the child on an average of three to four times per week. At that time the respondent informed the petitioner that he wanted her visitation with the child reduced to the times specified in the original decree. This reduced the petitioner's visitation to every other weekend. The parties eventually agreed to allow a visitation during the week as well. The respondent explained that he requested that the frequency of visitation be reduced because Leigh Anne was beginning kindergarten and the respondent and his new wife were trying to provide a more consistent environment for the child, and to reduce the stress on the child from constantly being shifted back and forth.

As we view the record, the reduced frequency of visitations complained of was the result of the child's entering school and not a desire by the respondent to keep the child from her mother.

While it is true that the respondent was troubled by the stress Leigh Anne experienced in being transferred back and forth between the parties' respective families, the respondent

testified that he wanted the child to see her mother and that he viewed the reduced frequency of visitation by the petitioner as a negative aspect of moving to New Hampshire. The move will result in much less frequent visitation by the petitioner. Nevertheless, we conclude that this circumstance did not provide a basis for changing custody. Such a change could only serve to destroy the stability that the child has enjoyed in the respondent's home. See *Little v. Little*, 221 Neb. 870, 381 N.W.2d 161 (1986).

Also, while it may be true that the petitioner has attained a more stable lifestyle by virtue of marriage and is now better able to provide for the child than she was at the time of the original decree, there is no evidence in the record that the respondent's fitness or abilities have declined since that time.

The petitioner suggests that the respondent's labeling of persons as "Christian" or "non-Christian" in Leigh Anne's presence constitutes a material change of circumstances. Allison Hicks, the respondent's present wife, testified that such distinctions were made in their home, but only when there was a "call for it." She denied the implication that they labeled everyone "who comes through" as such. We do not find this circumstance to be material.

In addition, the bulk of the evidence indicates that Leigh Anne has done quite well in the custody of the respondent. Father Schoech, the petitioner's present husband, testified that Leigh Anne always appeared to be clean, well cared for, and happy when she came for visits. The petitioner made similar acknowledgments. The evidence also shows that Leigh Anne has done well in school while in the respondent's custody and that she adapted well to her new school in New Hampshire. Additionally, the undisputed testimony shows that Leigh Anne is excited about being a big sister to the respondent's and Allison Hicks' new baby. Allison Hicks testified that her relationship with Leigh Anne has been "terrific."

The petitioner's final allegation of a material change in circumstances is that because the pretrial conference officer's report indicates that the respondent has now returned to Omaha, there is evidence that the respondent will constantly be on the move and therefore cannot provide Leigh Anne with a

consistent home environment. We do not address this issue, as there is no evidence of the respondent's return to Omaha in the record before us. Our determination of the issues presented, necessarily, must be made upon the record before us.

We conclude that there is no evidence of a material change in circumstances, and the trial court abused its discretion in transferring custody to the petitioner. The remaining issue is whether the trial court should have allowed the respondent to remove the child to New Hampshire.

The respondent maintains that the stipulation entered into at trial "should have taken the place of evidence on this subject [removal], and should have been binding on the Court."

The parties cannot by agreement bind the court to make a certain disposition with regard to the custody or removal of Leigh Anne. As stated in *Eliker v. Eliker*, 206 Neb. 764, 773-74, 295 N.W.2d 268, 273 (1980): "The disposition of minor children and provision for their support, in an action where a divorce is granted, is not controllable by agreement of the parties, but by the court on the facts and circumstances as disclosed to it." Nevertheless, we find that the trial court should have entered an order permitting the respondent to remove the child to New Hampshire.

"As a general rule, all other circumstances being equal, legitimate career changes of the custodial parent, whether they be job-related or matrimonial in nature, will support an application for changing the residence of a child placed in that parent's custody." *Little v. Little, supra* at 871, 381 N.W.2d at 162. If there is a legitimate reason for the custodial parent's decision to leave the jurisdiction, the minor child will be allowed to accompany the custodial parent if the court finds it to be in the best interests of the child to continue to live with that parent. *Boll v. Boll*, 219 Neb. 486, 363 N.W.2d 542 (1985). Custody is not to be interpreted as a sentence to immobility. *Boll, supra*.

In the present case the record contains substantial evidence that the respondent had a legitimate reason to move his family to New Hampshire. In *Boll v. Boll, supra*, we held that obtaining employment when unemployed and finding employment with a substantial opportunity for increased

earnings were both reasonable and legitimate reasons for a custodial parent to leave the jurisdiction.

There is no question but that the respondent's former employer, the federal land bank, was struggling financially when the respondent began to look for other work. He received an offer from the AT&T Bell Labs, which he considered both a career opportunity and an honor. While the respondent did have other interview opportunities in the Omaha area, the Bell Labs offer was the only job offer he had received when he accepted the position. The respondent did not act unreasonably in accepting the offer when he did. While the Bell Labs job may not initially have provided increased earnings, it was certainly desirable as compared with the prospect of no job at all.

The noncustodial parent's visitation rights and the minor child's community ties are important factors to be considered. But neither community ties nor a reduction in visitation necessarily mandates prohibiting a custodial parent from relocating for a legitimate reason. See, *Little v. Little*, 221 Neb. 870, 381 N.W.2d 161 (1986); *Boll v. Boll, supra.* In the present case, as in *Little, supra*, we find that it is in the child's best interests for the respondent to be allowed to remove the child from the jurisdiction, despite reduced visitation. The record shows Leigh Anne has prospered in the stability of the respondent's home.

The judgment of the district court is reversed and the cause remanded with directions to enter a decree in conformity with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.