Kyel Christine Hopkins, appellee, v.
Robert Keith Hopkins, appellant.
___ N.W.2d ___

Filed August 25, 2015.    No. A-14-790.

1. **Child Custody: Appeal and Error.** Child custody determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion.
2. **Judgments: Words and Phrases.** An abuse of discretion occurs when a trial court bases its decision upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.
3. **Evidence: Appeal and Error.** When evidence is in conflict, an appellate court considers, and may give weight to, the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another.
4. **Modification of Decree: Child Custody.** Ordinarily, custody of a minor child will not be modified unless there has been a material change in circumstances showing that the custodial parent is unfit or that the best interests of the child require such action.
5. **Modification of Decree: Child Custody: Words and Phrases.** A material change of circumstances means evidence that shows that something has occurred which, if the trial court had been aware of the existence of these circumstances initially, would have resulted in the trial court's granting the children's custody, in their best interests, to the other parent.
6. **Modification of Decree: Child Custody: Proof.** Before custody may be modified based upon a material change in circumstances, it must be shown that the modification is in the best interests of the child.
7. ____: ____: ____. The party seeking modification bears the burden of showing a material change of circumstances affecting the best interests of the child.

8. **Modification of Decree: Child Custody: Convicted Sex Offender.** When the grounds for modification of child custody are based on the presence of a registered sex offender residing in a home, such grounds for modification must also be analyzed under the statutory framework found in Neb. Rev. Stat. § 43-2933 (Reissue 2008).

9. \_\_\_\_: \_\_\_\_: \_\_\_\_. Pursuant to Neb. Rev. Stat. § 43-2933(1)(b) and (3) (Reissue 2008), when a person involved in a custody dispute is residing with someone who is required to register as a sex offender under the Sex Offender Registration Act as a result of a felony conviction in which the victim was a minor or as a result of an offense that would make it contrary to the best interests of the child if the person had custody, such cohabitation development shall be deemed a change in circumstances sufficient to modify a previous custody order, unless the court finds that there is no significant risk to the child and states its reasons in writing or on the record.

10. **Modification of Decree: Child Custody: Convicted Sex Offender: Presumptions.** In order to modify custody based on Neb. Rev. Stat. § 43-2933(3) (Reissue 2008), a material change in circumstances need not be established, because the statute creates a statutorily deemed change of circumstances sufficient to warrant a change in custody if a registered sex offender is residing in a parent's home. However, the presumption against custody can be overcome if the court finds there is no significant risk to the children and states its reasons in writing.

11. **Modification of Decree: Child Custody: Convicted Sex Offender: Proof.** If an attempt to change custody is not successful pursuant to Neb. Rev. Stat. § 43-2933 (Reissue 2008), then as to any other grounds for modification alleged, the party seeking the modification in custody bears the burden of showing a material change of circumstances affecting the best interests of the child.

Appeal from the District Court for Phelps County: Terri S. Harder, Judge. Affirmed as modified.

Mindy L. Lester, of Ross, Schroeder & George, L.L.C., for appellant.

Nicholas D. Valle, of Langvardt, Valle & James, P.C., L.L.O., for appellee.

Moore, Chief Judge, and Pirtle and Bishop, Judges.

Bishop, Judge.

Kyel Christine Hopkins and Robert Keith Hopkins were divorced in March 2004. According to the decree dissolving their marriage, Kyel was awarded custody of their minor children, Alexus and Hadley Hopkins. In January 2013, Kyel filed an application to modify the decree, seeking to modify Robert's parenting time. In March 2013, Robert filed a counterclaim seeking legal and physical custody of the children, subject to Kyel's reasonable right of visitation. After a bench trial, the district court filed an order in which it denied Kyel's application to modify and Robert's counterclaim. Robert appeals and claims that pursuant to Neb. Rev. Stat. § 43-2933 (Reissue 2008), the fact Kyel is married to and living with a registered sex offender constitutes a material change in circumstances; that there is a significant risk to the children; and that it is in the children's best interests that he be awarded custody. We affirm as modified.

## BACKGROUND

Kyel and Robert were married in July 1999. They have two children together: Alexus, born in February 1999, and Hadley, born in March 2001. Kyel and Robert were divorced in March 2004. The divorce decree awarded "custody" to Kyel, subject to Robert's reasonable rights of visitation to include every other weekend from 6 p.m. on Friday to 6 p.m. on Sunday and every Tuesday evening from 4 to 7:30 p.m. Robert was ordered to pay child support to Kyel in the amount of $284 per month.

In January 2013, Kyel filed an application to modify, seeking to modify Robert's parenting time.

In March 2013, Robert filed an answer and counterclaim. In his answer, he denied that it was in the children's best interests to decrease his parenting time, but affirmatively alleged that it would be in the children's best interests to increase his parenting time. In his counterclaim, Robert sought legal and physical custody of the children, subject to Kyel's reasonable right of visitation.

A bench trial was held on July 1 and August 1, 2014. A substantial amount of testimony involved Kyel's current husband, Thomas Rott (Tom), and his status as a registered sex offender.

Kyel had lived on a farm near Glenvil, Nebraska, for 3 to 4 years prior to trial. She worked as a "CNA" and "med aide" in Blue Hill, Nebraska; her shift was from 6 a.m. to 2:15 p.m. (she did not specify which days of the week). In addition to Alexus and Hadley, Kyel has two other daughters, who are not Robert's.

Kyel testified that she has known Tom for approximately 5 years. Kyel and Tom (along with Alexus, Hadley, and Kyel's two other daughters) moved in together in September 2011. Kyel and Tom were married in June 2012. Kyel testified that she knew about Tom's history as a sex offender before she moved in with him.

Tom testified that he was incarcerated from 2003 to 2007 for sexually assaulting his stepdaughter during a prior marriage. Tom testified that while he was incarcerated at the penitentiary, he took "GOLF 1, 2, and 3" ("GOLF 3" was specifically for sex offenders). He said that "GOLF is a program where you start looking at your thought processes, patterns, looking at your thinking distortions and your beliefs, how to challenge those thoughts, recognizing them, challenging them, and learning not to think that way again." Tom said it took him 2 years to successfully complete GOLF 1 through 3. At the Lincoln Correctional Center, Tom went through an inpatient sex offender program, and he successfully completed the program after 18 to 20 months. He is a registered sex offender in Glenvil.

Kyel testified that before she and all four girls moved in with Tom, she called the "child protective services hotline" to talk to that agency, and that she also talked to her family; she did not tell Alexus and Hadley (aged 11 and 9 at the time) because she thought they were too young and she wanted to protect them from the social aspect of the situation. Kyel also

did not tell Robert about Tom because she has "never been able to talk to him about anything."

Kyel testified that both girls at issue in this case have a good relationship with Tom; they help him with projects and they ask him for help. There is no indication that the girls are afraid of Tom. And Kyel testified that there is no significant risk to having Tom in the home. Kyel testified there is a lock on the bathroom door—not because of Tom's past, but because before Kyel and Tom moved in together, the girls were not used to living with a man and it "didn't really matter if you happened to walk in on . . . one of your sisters." The girls are also told to take their clothes with them when they bathe, so that no one is walking around the house in a towel. Kyel and Tom both testified that if the court determines that Tom is a risk, he will move out of the home immediately.

Tom also testified that in the family home, there are bathroom locks and a dress code, and that he is rarely alone with just one child. He is in the home with the girls every morning from 6 to 7 a.m., the time between when Kyel leaves for work and when he leaves for work. Tom testified that "red flags" would include his being withdrawn or depressed, spending a lot of time with one child alone, granting special privileges to one child, or keeping secrets. (There was testimony that Tom took Alexus hunting on one or two occasions for a few hours. There was also testimony that the girls had not told Kyel about two occasions when Tom had angry outbursts—once when he threw something at a grain bin and once when he slammed on the brakes while driving.)

Kyel testified that Hadley is going into the seventh grade. Hadley is "slightly delayed" and had to repeat first grade, but "tested out of all of her IEPs" last year. Kyel testified that Alexus does "[g]reat" in school and is extremely intelligent. Both girls are involved in activities. Hadley participates in chess club and 4-H. Alexus participates in "Skills USA" and "one act," and is on the bowling team at her school. Both girls also do chores at home.

Kyel testified that she and Robert do not get along very well, but that she tries to encourage the girls' relationship with him. If one of the girls has an activity or wants to do something besides going to Robert's, Kyel encourages that child to talk to Robert about it. Kyel wanted the girls to have a good relationship with Robert and thought that it was her job to facilitate that. However, Kyel was upset that the girls sometimes quit activities to spend time with Robert; she thought they should have the option of doing both. Kyel wanted the parenting time schedule changed so that the girls had more freedom during the school year to do activities; she wanted to reduce Robert's school year visitation to one weekend per month, but give him more time during the summer.

Robert lives in Central City, Nebraska, and at the time of trial had been married to his wife for 5 years. Robert's wife has two children of her own, and she and Robert also have one child together, who was 3 years old at the time of trial and has Down syndrome. At the time of trial, Robert was working the night shift (5:30 p.m. to 5:30 a.m.) Mondays through Thursdays at a company in Grand Island, Nebraska. He testified that it was only a matter of time before he would switch to the day shift. Robert testified that his wife was fully supportive of his seeking custody of the girls. Robert testified that if he got custody of the girls, he would facilitate a relationship between the girls and Kyel.

Robert testified that Kyel monitors all of his conversations with the girls and that he can always hear Kyel in the background when he is on the telephone with them; however, Robert has not talked to Kyel about it. Robert admits that after Kyel took Alexus' "Facebook" privileges away (for not giving Kyel the password), he helped Alexus set up a new account so that he and Alexus could communicate; he said that he had the password for the new account, but Alexus testified that Robert does not have the password. Kyel testified that this incident is an example of how Robert tries to circumvent her parenting.

Robert did not know that Hadley "was in an IEP process" until the day before trial; he said that Kyel never told him. Robert said that if he had known, he would have attended the related meetings. Robert testified that he had not attended parent-teacher conferences in several years, but would have attended if he had known about them. Robert acknowledged that he could have called the relevant school but did not. Robert said that the girls have changed schools multiple times while in Kyel's custody since the divorce. Kyel testified that she never told the girls' schools not to give information to Robert. Kyel testified that she put Robert's name and telephone number on all school forms.

Robert testified that he told Alexus about Tom's past in July 2013 when he became aware of it; Robert had "Google[d]" Tom's name to find out Kyel and Tom's address, and Tom's name "popped up" on the sex offender registry. Robert testified that he did not try to talk to Kyel about it and that he did not call Joan Schwan, after she became the girls' therapist.

Schwan is a licensed independent mental health practitioner who has been working with Alexus and Hadley since August 2013. Schwan testified that Alexus loves Robert and enjoys spending time with him, but that she also likes her school and is involved in a lot of activities. Because Robert lived in Central City, a custody change would mean changing schools. Schwan tried to help Alexus share her feelings with both parents when things come up, because Alexus felt like she had to "keep it all in herself like the weight of the world was on her shoulders, and that's been a lot of stress for her." According to Schwan, Alexus has wavered on where she wants to live; she previously said she wanted to live with Robert (but at the time was mad at Kyel and had a boyfriend in Central City, where Robert lives), but recently said she wanted to stay at her same school.

Schwan testified that Hadley is emotionally delayed and that she has some cognitive delays. Hadley was going into the seventh grade, but was more like a fourth grader emotionally

and a fifth grader intellectually. Hadley is "pretty concrete" in her thinking; she does not think through the long-term consequences of her decisions. Schwan said that at the beginning of therapy, Hadley wanted to stay with Kyel, but that Hadley recently said she wants to live with Robert because she wants to spend more time with her "baby sister," who is Robert's youngest daughter; Schwan testified that Hadley does not really understand that if she lives with Robert, it would mean being separated from her siblings who live at Kyel's house. Schwan testified that Hadley is a "people pleaser" and tries to make everyone happy, especially because the court date was getting closer.

Schwan testified that she was aware that Tom spent 4 years in prison for sexual assault of his stepdaughter; she had reviewed his criminal charges and some of the evaluations from the state penitentiary. Schwan has never met Tom. And while she has training regarding sex offenses, Schwan works with juvenile sex offenders, not adult sex offenders. In September 2013, Schwan had a therapy session with Kyel, Alexus, and Hadley wherein Kyel shared Tom's past with the girls. Schwan testified that Hadley accepted the news "okay" but that Alexus got angry and shut down, saying, "I've already known for years." Alexus said that Robert trusted her enough to tell her, and he told her not to trust Tom; Alexus was mad at Kyel for keeping it a secret from her.

Schwan would check in with Alexus and Hadley regarding Tom's behavior and would look for signs of grooming (which she described as gaining the trust of a would-be child victim, finding out if the child would keep secrets, and granting special favors to the child) or other inappropriate behavior. Schwan also worked with the girls regarding appropriate boundaries, red flags, and risks. Schwan testified that no grooming was ever reported to her and that there seemed to be very good boundaries in the home. Schwan testified that she did not perceive a risk to the children.

Schwan acknowledged that Kyel was previously involved with a man who fathered her youngest daughter and who was convicted of sexually assaulting her oldest daughter when she was 5 years old. Thus, Tom is Kyel's second relationship with a sex offender. However, Schwan testified that she and Kyel have talked about Kyel's ability to see red flags and that Kyel is working on it. Schwan also acknowledged that the girls had not told Kyel about Tom's angry outbursts (once when he threw something at a grain bin and once when he slammed on the brakes while driving), but Schwan said it was significant that they reported the incidents to Schwan—the girls did not keep the incidents a secret. Schwan also testified that since the girls are old enough, she has done some work with them on self-protection and boundaries, so that the girls know what to do. Schwan testified that she does not believe the girls are at risk in Kyel's home.

Both Alexus and Hadley testified in chambers. Hadley testified that she wanted to live with Robert so that she can see him and his youngest daughter more. She loves both of her parents. She testified that at Kyel's house, she does chores and sometimes gets to go to the library or "hang out" with friends. She testified that at Robert's house, "we usually just watch TV" and she has more freedom. Hadley did not like all of the chores (cleaning up after all of her farm animals) at Kyel's house. She wanted to be able to see her friends more and "go to the water park and hang out." Hadley got along fine with Tom and was not afraid of him.

Alexus testified that either house is a good house. She had opinions about where she wants to live, but stated that "it's just too much to choose," and she wants to stay out of it. Alexus was mad at Kyel for not telling her about Tom's past, but she felt safe at Kyel's and did not feel like she is in danger with Tom.

Several other witnesses testified on behalf of the parties. All of Kyel's witnesses testified that she is a good mother and that there are no concerns about Tom or his past; some

witnesses testified that they let their children spend the night at Kyel's after Kyel informed them about Tom's status as a sex offender. All of Robert's witnesses testified that he is a good father and loves his children.

After a bench trial, the district court filed its order on August 5, 2014, wherein it denied Kyel's application to modify and Robert's counterclaim. As to Kyel's application to modify, the court noted that Kyel claimed a material change in circumstances due to the children's ages and their desires, and Kyel's desire, that, in the court's words, "they be able to participate in extra-curricular activities in high school without having to miss activities or negotiate for [Robert's] permission to modify his visitation schedule." The court concluded that the fact the children are teenagers and involved in activities was not a material change in circumstances and that it was certainly anticipated that those things would occur. The court "encourage[d]" both parties to be "increasingly flexible about the time they have with their children so that a visitation schedule does not interfere with their opportunity to be 'normal' teenagers."

When evaluating Robert's counterclaim, the court said:

> The Court must evaluate the COUNTERCLAIM in light of Neb. Rev. Stat. § 43-2933(1)(b) and (c). The foregoing is a section from the PARENTING ACT that deals with custody and visitation of minor children as it relates to living with a sex offender. [Subsection (1)(b)] provides that if a child is residing in a household with a sex offender, the Court must make a finding of no significant risk to the child before the child can be left in that household. Subsection [(1)(c)] provides that a child who is permitted unsupervised contact with a person who must register under the Sex Offender Registration Act is prima facia [sic] evidence that the child is at significant risk. The statute goes on to provide that this prima facia [sic] evidence constitutes a presumption which affects the burden of producing evidence. Based

on the foregoing, [Robert] has a presumption in his favor due to the fact that [Kyel] has married and lives with a sex offender.

After placing "considerable weight" on the testimony of Schwan, the court found that "the fact that the children are living with [Tom] is not a material change in circumstances warranting a change of custody," and the court found that "the children are not at significant risk with [Tom]." The court also considered "all of the other factors presented with respect to a change in custody, including the children's preference," but did not find a material change in circumstances. Accordingly, the court denied Robert's counterclaim with regard to custody. The court did, however, characterize Robert's request for "'just and equitable relief'" as an opportunity to specify holiday and summer parenting time, since the original decree of dissolution failed to do so.

Robert has filed this timely appeal.

## ASSIGNMENTS OF ERROR

Robert claims that the district court erred in (1) finding no significant risk to the minor children, (2) finding no material change in circumstances, (3) failing to make a determination as to the best interests of the minor children, and (4) failing to award custody to Robert.

## STANDARD OF REVIEW

[1,2] Child custody determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion. *Watkins v. Watkins*, 285 Neb. 693, 829 N.W.2d 643 (2013). An abuse of discretion occurs when a trial court bases its decision upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id*.

[3] When evidence is in conflict, an appellate court considers, and may give weight to, the fact that the trial judge

heard and observed the witnesses and accepted one version of the facts rather than another. *State on behalf of Savannah E. & Catilyn E. v. Kyle E.*, 21 Neb. App. 409, 838 N.W.2d 351 (2013).

## ANALYSIS

*Change in Circumstances and Significant Risk Pursuant to § 43-2933.*

[4-8] At the outset, we note that the parties and the district court refer to a "material change in circumstances" when discussing § 43-2933 as well as other grounds for modification; and while § 43-2933(3) refers to a "change in circumstances," the statute does not contain the word "material." That distinction will be further addressed later in this opinion. But our discussion must first start with *Watkins, supra*, wherein the Nebraska Supreme Court interpreted § 43-2933 for the first time and concluded that the statute provided for a statutorily deemed change in circumstances and that such a change in circumstances is sufficient for modification. Ordinarily, custody of a minor child will not be modified unless there has been a material change in circumstances showing that the custodial parent is unfit or that the best interests of the child require such action. *Watkins, supra*. A material change of circumstances means evidence that shows that something has occurred which, if the trial court had been aware of the existence of these circumstances initially, would have resulted in the trial court's granting the children's custody, in their best interests, to the other parent. See *Hicks v. Hicks*, 223 Neb. 189, 388 N.W.2d 510 (1986). Before custody may be modified based upon a material change in circumstances, it must be shown that the modification is in the best interests of the child. *Schrag v. Spear*, 290 Neb. 98, 858 N.W.2d 865 (2015). The party seeking modification bears the burden of showing a material change of circumstances affecting the best interests of the child. *Hicks, supra*. While these principles generally apply in custody modifications, when the grounds for modification are based on the presence of a registered sex offender

residing in a home, *Watkins* tells us that such "grounds for modification must also be analyzed under the statutory framework found in § 43-2933 relating to a sex offender residing in the home." 285 Neb. at 699, 829 N.W.2d at 648.

Section 43-2933(1)(b) provides:

> No person shall be granted custody of, or unsupervised parenting time, visitation, or other access with, a child if anyone residing in the person's household is required to register as a sex offender under the Sex Offender Registration Act as a result of a felony conviction in which the victim was a minor or for an offense that would make it contrary to the best interests of the child for such access unless the court finds that there is no significant risk to the child and states its reasons in writing or on the record.

Section 43-2933(3) provides that "[a] change in circumstances relating to [the above-quoted] subsection . . . is sufficient grounds for modification of a previous order."

[9] *Watkins v. Watkins*, 285 Neb. 693, 829 N.W.2d 643 (2013), is the only appellate case in Nebraska to discuss or apply § 43-2933 to date. In *Watkins*, the Nebraska Supreme Court stated:

> Pursuant to the plain language of § 43-2933(1)(b) and (3), when a person involved in a custody dispute is residing with someone who is required to register as a sex offender under the Sex Offender Registration Act as a result of a felony conviction in which the victim was a minor or as a result of an offense that would make it contrary to the best interests of the child if the person had custody, such cohabitation development shall be deemed a change in circumstances sufficient to modify a previous custody order, unless the court finds that there is no significant risk to the child and states its reasons in writing or on the record. Thus, in applying § 43-2933, a district court must first determine whether there is an individual residing in the household who is required to

register under the Sex Offender Registration Act and, if so, whether the offense triggering the registration requirement is due to a felony conviction in which the victim was a minor, whether the offense triggering the registration would make it contrary to the best interests of the child whose custody is at issue, or whether the offense does not meet either of these two descriptions. *If the district court finds the offense to be a felony involving a minor victim or an offense contrary to the best interests of the child*, § 43-2933(1)(b), *there is a statutorily deemed change of circumstances*, § 43-2933(3), *and custody shall not be granted to the person who resides with the sex offender unless there is a finding by the district court that the circumstances present no significant risk.* In sum, taken together, § 43-2933(1)(b) and (3) create a statutory presumption against custody being awarded to the person residing with a sex offender who committed the described offenses, but the presumption can be overcome by evidence.

285 Neb. at 700-01, 829 N.W.2d at 649 (emphasis supplied).

[10] Accordingly, in order to modify custody based on § 43-2933(3), a material change in circumstances need not be established, because the statute creates a statutorily deemed change of circumstances sufficient to warrant a change in custody if a registered sex offender is residing in a parent's home. However, the presumption against custody can be overcome if the court finds there is no significant risk to the children and states its reasons in writing, as the district court did here. Robert argues that because Kyel is now married to and residing with a registered sex offender, the district court erred in finding that there was not a material change in circumstances sufficient for modification of custody. Robert cites to *Watkins, supra*, for the proposition that § 43-2933(1)(b) and (3), taken together, create a statutory presumption against awarding custody to the person residing with a sex offender who committed the described offenses. Robert argues that because there

was no dispute at trial that Tom is a convicted felon who is required to register as a sex offender due to a felony involving a minor child, the statute provides that a change of circumstances sufficient for modification has occurred.

In this case, the evidence shows that subsequent to the decree, Kyel moved in with and eventually married Tom, a registered sex offender. The record shows that the offense triggering registration was based on Tom's conviction of attempted sexual assault, a Class III felony; the victim was his 15-year-old stepdaughter. Accordingly, Tom's requirement that he register as a sex offender is the result of a felony conviction in which the victim was a minor. Because Robert established that Kyel resided with a sex offender, the statute provides that a change of circumstances sufficient for modification has occurred, and it is presumed under the statute that Kyel may not have custody, unsupervised parenting time, visitation, or other access to Alexus and Hadley. This court views this presumption to mean that it is not in the best interests of children to live in the home of a registered sex offender when the underlying offense involved a minor or other offense contrary to the best interests of the child. However, this presumption can be overcome if the district court finds, based on the evidence, that there is no significant risk to the children and states its reasons in writing or on the record. In this case, the district court did so find and stated in its order:

> [Tom] was convicted of a felony offense involving a child. He spent four years in the Nebraska State Penitentiary for this offense. He is required to register as a sex offender pursuant to Nebraska law. While at the penitentiary, [Tom] successfully completed a two year sex offender treatment program and other programming to better himself. [Tom] testified at trial.
>
> Joan Schwan, a licensed mental health practitioner, testified. [She] has been seeing the minor children since June, 2013 [and] is aware of [Tom's] background. Through counseling, she has evaluated the home for risk

factors, has talked to the girls about boundaries, and evaluated whether any grooming behaviors by [Tom] were going on. She testified that no questionable behavior by [Tom] was reported by the girls. She testified that she does not believe [Tom was] a risk to the children. Alexus testified that she felt safe at [Kyel's] home and that she is friends with Tom. She testified that she knew about the sex offender registry the summer before her 7th grade year. Alexus recounted a couple of times that Tom had angry outbursts, however, nothing remotely of a sexual nature. Hadley also stated that Tom was good and that she gets along fine with him. She . . . reports that Tom yells and sends her to the corner for discipline. She reports no actions of a sexual nature by Tom.

After placing "considerable weight" on the testimony of Schwan, the court found that "the fact that the children are living with [Tom] is not a material change in circumstances warranting a change of custody" and the court found that "the children are not at significant risk with [Tom]."

Robert argues that the district court erred by concluding there was no material change in circumstances, because "there is a statutory material change in circumstances," and that the court "should have first determined there was a material change in circumstances and then moved to the next step of the analysis." Brief for appellant at 17. To the extent Robert is arguing that the district court should have concluded there was a statutorily deemed change in circumstances and then proceeded to determine whether there was a significant risk to the children, we agree. However, although not set forth in the precise language preferred, it is clear that the district court properly evaluated the facts of the case in accordance with the statute by specifically addressing Tom's registered sex offender status, and then evaluating whether he posed a significant risk to the children. The district court concluded that there was no significant risk to the children and that the fact Tom lived with the children was not

a material change in circumstances warranting a change of custody. In order to conclude there was no significant risk to the children, the court had to consider the best interests of the children. Implicit in the district court's holding is the determination that it was not in the children's best interests to modify custody based solely on the fact that Tom lived with them. Our Supreme Court likewise concluded that the record in *Watkins v. Watkins*, 285 Neb. 693, 702, 829 N.W.2d 643, 650 (2013), established that the children therein "were not at significant risk and that the best interests of [the children] did not require modification." Thus, although there was a statutorily deemed change of circumstances and a statutory presumption that Kyel would not have custody, unsupervised parenting time, visitation, or other access to Alexus and Hadley due to Tom's presence in the household, the district court provided sufficient reasons supported by the record that Alexus and Hadley were not at significant risk and it was not in their best interests to modify custody on this basis. Like the court in *Watkins, supra*, we believe that the district court made a thorough and careful evaluation of the evidence and did not abuse its discretion in reaching its conclusion. To the extent, however, that the district court's order can be read to say there was no change in circumstances with regard to the application of § 43-2933, it is modified accordingly to be consistent with this opinion.

Although Robert directs us to evidence in the record to suggest that the district court should have concluded there was a significant risk, when evidence is in conflict, an appellate court considers, and may give weight to, the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *State on behalf of Savannah E. & Catilyn E. v. Kyle E.*, 21 Neb. App. 409, 838 N.W.2d 351 (2013).

*Best Interests and Custody.*

Robert argues that because there was a change in circumstances pursuant to § 43-2933, the court was obligated

to determine the best interests of the children as set forth in the Parenting Act, and that best interests required that custody be awarded to him. It appears that Robert is arguing that once a statutorily deemed change of circumstances has been established pursuant to § 43-2933, it is no longer necessary to prove a material change in circumstances as to other allegations upon which a change in custody is being sought. We disagree. Once the statutorily deemed change in circumstances has been established pursuant to § 43-2933, and the district court concludes there is no significant risk to the children, then as to any other grounds alleged as a basis for modification, we return to the legal proposition ordinarily applied, namely, that custody of a minor child will not be modified unless there has been a material change in circumstances showing that the custodial parent is unfit or that the best interests of the child require such action. *Watkins, supra*. Continued discussion of *Watkins* is helpful with regard to this issue as well.

In *Watkins v. Watkins*, 285 Neb. 693, 829 N.W.2d 643 (2013), after determining that modification of custody was not required due to the cohabitation of the mother with a registered sex offender, the district court then evaluated whether a material change in circumstances occurred to justify modification based on other grounds alleged. In *Watkins*, the other grounds alleged included concerns about the sex offender's 10-year-old son who had behavioral issues, as well as concerns raised about the mother's lack of stability as evidenced by her eight residence changes over the course of about 6 years. The district court in *Watkins* determined that there had not been a material change in circumstances based upon any risks posed by the son, because he was no longer residing with the mother, and that although there was some concern about the mother's stability, it also was not sufficient to establish a material change of circumstances warranting a change of custody. The Supreme Court concluded that the district court did not err or abuse its discretion in making those determinations.

[11] Accordingly, *Watkins* makes it clear that a person seeking a change in custody based upon "material" changes in circumstances cannot piggyback such alleged material changes on the statutorily deemed change in circumstances provided by § 43-2933. Rather, if the attempt to change custody is not successful pursuant to § 43-2933, then as to any other grounds for modification alleged, the party seeking the modification in custody bears the burden of showing a material change of circumstances affecting the best interests of the child. See *Hicks v. Hicks*, 223 Neb. 189, 388 N.W.2d 510 (1986).

A material change of circumstances means evidence that shows that something has occurred which, if the trial court had been aware of the existence of these circumstances initially, would have resulted in the trial court's granting the children's custody, in their best interests, to the other parent. See *Hicks, supra*. Here, as in *Watkins, supra*, after concluding a modification of custody was not warranted pursuant to § 43-2933, the district court went on to consider whether a material change in circumstances affecting the best interests of the children had occurred based upon the other matters raised by Robert as a basis to modify custody. In the case before us, the district court stated specifically:

> The Court has considered all of the other factors presented with respect to a change in custody, including the children's preference. The Court does not find that there is a material change in circumstance based on all of the other factors presented. It is significant to the Court that Alexus has attended 6 or 7 schools and Hadley has attended 5 schools. Hadley has special needs and school is challenging for her. The girls have been in [their current] School District for a couple of years now and the Court believes it is important that they both have the stability and structure of remaining in the same school system.

Robert argues that the district court abused its discretion "in that it made no determination or finding whatsoever regarding

the best interests of these children." Brief for appellant at 25. When considering the other factors alleged by Robert to constitute a basis for a change in custody, the court says only that it "does not find that there is a material change in circumstances based on all of the other factors presented." Apparently, Robert views this as a failure by the court to consider the children's best interests. However, it is clear that the court considered whether there was any material change affecting the best interests of the children, as evidenced by the court's discussion of matters pertinent to the children, such as their preferences about where to live, their educational needs, and their stability. The evidence presented at trial was that the girls' preferences for custody had changed over time. Alexus did not want to offer an opinion at the time of trial, but according to Schwan, Alexus did not want to change schools. And while Hadley had recently expressed a desire to live with Robert so that she could spend more time with his youngest daughter, Schwan testified that Hadley does not really understand that if she lives with Robert, it would mean being separated from her siblings at Kyel's house. The court took the children's preferences into consideration, along with the other evidence presented, when making its decision to deny modification of custody as noted above.

Child custody determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion. *Watkins v. Watkins*, 285 Neb. 693, 829 N.W.2d 643 (2013). And when evidence is in conflict, an appellate court considers, and may give weight to, the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *State on behalf of Savannah E. & Catilyn E. v. Kyle E.*, 21 Neb. App. 409, 838 N.W.2d 351 (2013).

Having considered the record and bases asserted by Robert in support of modification of custody in addition to § 43-2933, we cannot say that the district court abused its discretion

in concluding that there was no material change in circumstances affecting the best interests of the children on these other grounds. And as discussed earlier, after finding a statutorily deemed change in circumstances in accordance with § 43-2933, a consideration of the children's best interests is inherent in determining whether residing with a registered sex offender poses a significant risk. The district court's reasons for concluding that Tom's residence with the children did not pose a significant risk were set forth in the order and are supported by the record.

## CONCLUSION

For the reasons stated above, we agree with Robert that there was a statutorily deemed change of circumstances in this case pursuant to § 43-2933, and to the extent the district court's order can be read to say there was no change in circumstances with regard to the application of § 43-2933, it is modified accordingly to be consistent with this opinion. However, we cannot say that the district court abused its discretion in determining that modification of custody was not warranted pursuant to § 43-2933 or the other grounds alleged in Robert's counterclaim seeking to modify custody. Thus, we affirm as modified.

AFFIRMED AS MODIFIED.