IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

SAWYER-KOCIEMBA V. KOCIEMBA

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

BRAXTON C. SAWYER-KOCIEMBA, APPELLEE,

V.

SHYANN M. KOCIEMBA, NOW KNOWN AS SHYANN M. WALKER, APPELLANT.

Filed October 13, 2020.    No. A-20-153.

Appeal from the District Court for Custer County: KARIN L. NOAKES, Judge. Affirmed as modified.

Bradley D. Holbrook and Elizabeth J. Klingelhoefer, of Jacobsen, Orr, Lindstrom & Holbrook, P.C., L.L.O., for appellant.

Michael S. Borders, of Borders Law Office, for appellee.

PIRTLE, Chief Judge, and RIEDMANN and ARTERBURN, Judges.

ARTERBURN, Judge.

## I. INTRODUCTION

Shyann M. Kociemba, now known as Shyann M. Walker, appeals from an order entered by the district court for Custer County which modified the parenting plan previously established for her and her ex-husband, Braxton C. Sawyer-Kociemba, and which granted Braxton's application for removal of the children to Illinois. For the reasons set forth herein, we affirm the district court's decision as modified.

## II. BACKGROUND

Shyann and Braxton were married in November 2012 and divorced in 2017. Two boys were born during the marriage, who were ages 5 and 6 at the time of the current proceedings. The parties were unrepresented during their divorce proceedings, but they agreed to joint legal custody

of the children with physical custody being placed with Braxton. Shyann received parenting time every other weekend and on an alternating holiday schedule. During the summer, the parties were awarded alternating 2-week periods of parenting time with the children. Following the divorce Shyann moved from Broken Bow initially to Omaha but then relocated to Kearney in order to pursue a psychology degree at the University of Nebraska at Kearney. At the time of the divorce Shyann was 22 years old. Shyann was still in school at the time of the modification hearing and was employed as a pharmacy technician at Good Samaritan Hospital in Kearney. Shyann remarried in July 2019.

In May 2019, Braxton married Lori Thomas. Lori was a Ph.D. candidate in the field of swine nutrition at Kansas State University at the time of the marriage, but was engaged in research at a hog feeding operation in the Broken Bow area. Following the marriage and the awarding of her degree, Lori secured employment as a swine nutritionist with a nutrition production firm in Belleville, Illinois. Lori grew up in the Belleville area and her extended family still lived nearby. She is paid $120,000 per year with benefits. She is renting a large farmhouse at low cost on 160 acres which is owned by her parents. Prior to accepting the job in Belleville, Lori explored job opportunities in Nebraska, but found none that matched her qualifications or the salary offered in Illinois. She also considered potential employment in Des Moines, Iowa, and Minneapolis, Minnesota.

At the time of trial, Braxton had been employed as a deputy sheriff by the Custer County Sheriff's Department since 2014. His annual salary was $54,000. While health insurance was provided to him, he was required to purchase separate coverage for his dependents. Braxton explored employment opportunities in the area surrounding Belleville and was given a conditional offer of employment with the Swansea, Illinois, police department. The offer was conditional on him passing a background check, passing a test, and becoming a certified law enforcement officer in Illinois. He was offered a salary of $74,000 per year plus benefits including paid tuition for college courses leading to a bachelor's degree, health insurance, and retirement. Braxton testified that his new position had greater opportunities for advancement and that he would receive an additional pay increase if he finished a degree in criminal justice. On May 17, 2019, Braxton filed a complaint to modify requesting an order from the district court to remove the children with him to Belleville, Illinois, due to employment opportunities he and his new wife had there.

The drive between Kearney, where Shyann still resides, and Belleville would take approximately nine hours. Braxton acknowledged the distance could impact Shyann's relationship with the children. The parties were unable to negotiate a revised parenting plan that would allow Braxton to move the children. Braxton offered his own proposal during trial. Braxton's parenting plan included suggestions Shyann had originally proposed which had the parties meet halfway in Kansas City several times a year for weekend visits. Braxton also testified he would be willing to make Shyann aware of any occasions he would be returning to Nebraska with the boys to visit his mother so the boys could also visit Shyann in Kearney. Braxton's proposed plan did not memorialize this specific proposal, however.

Shyann testified in opposition to Braxton's request to remove the children. Shyann did not want her children to be located such a significant distance from her home due to her inability to see them as frequently. She testified that even though she works 30-40 hours per week and her husband is employed, she was concerned that she could not afford the visits to Kansas City. She

was further concerned about the level of communication she had received from Braxton about the boys' activities and appointments in the past. She also expressed her concern with the lack of contact the boys would have with her extended family in Nebraska. Ultimately, she believed her relationship with her sons would suffer if Braxton were allowed to move the children to Illinois.

On rebuttal, Braxton introduced evidence that Shyann had paid only $50 per month in child support since the time of the divorce. A child support calculation based on Shyann's current income was received which if placed into effect, would have raised her support to approximately $500 per month. Despite Shyann's increase in income, Braxton did not ask for increased child support, but did ask the court to consider this evidence for purposes of determining how the parties' travel expenses should be paid with respect to Shyann's parenting time. Braxton further testified that Shyann has not exercised all of her parenting time in the past. She did not exercise any of her extended summer parenting time in 2018 and exercised only 2 of 9 days of parenting time during the children's winter break of 2019-20. Further background will be discussed in our analysis.

The district court approved Braxton's application to remove the children to Illinois and adopted a modified parenting plan. Under the court's plan, Shyann would receive five weekend visits per year in Kansas City during months that she would not have holiday or summer visitation. Her periods of holiday and summer parenting time would be in her home. During the summer, she was awarded two 4-week periods of parenting time. In addition she was allowed to exercise further parenting time in Belleville with 2 weeks' notice to Braxton. The parenting plan is silent on Braxton's offer to grant Shyann additional parenting time when he and the children are visiting Nebraska. Shyann appeals from the court's decision.

## III. ASSIGNMENTS OF ERROR

Shyann alleges that the district court erred in (1) finding that Braxton had a legitimate reason for removing the children to Illinois, (2) finding that the removal was in the best interests of the children, and (3) failing to create a parenting plan that fostered a reasonable relationship between her and her children.

## IV. STANDARD OF REVIEW

Child custody and parenting time determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion. *Schrag v. Spear*, 290 Neb. 98, 858 N.W.2d 865 (2015). An abuse of discretion occurs when a trial court bases its decision upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.* A judicial abuse of discretion requires that the reasons or rulings of the trial court be clearly untenable insofar as they unfairly deprive a litigant of a substantial right and a just result. *Id.* In child custody cases, where the credible evidence is in conflict on a material issue of fact, the appellate court considers, and may give weight to, the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Id.*

## V. ANALYSIS

### 1. LEGITIMATE REASON FOR REMOVAL

In order to prevail on a motion to remove a minor child to another jurisdiction, the custodial parent must first satisfy the court that he or she has a legitimate reason for leaving the state. *Daniels v. Maldonado-Morin*, 288 Neb. 240, 847 N.W.2d 79 (2014). After clearing that threshold, the custodial parent must next demonstrate that it is in the child's best interests to continue living with him or her. *Id*. The purpose of requiring a legitimate reason for leaving the state in a motion to remove a minor child to another jurisdiction is to prevent the custodial parent from relocating the child because of an ulterior motive, such as frustrating the noncustodial parent's visitation rights. *Steffy v. Steffy*, 287 Neb. 529, 843 N.W.2d 655 (2014).

Fundamental constitutional rights underlie this framework. The custodial parent has the right to travel between states and the right to migrate, resettle, find a new job, and start a new life. *Shapiro v. Thompson*, 394 U.S. 618, 89 S. Ct. 1322, 22 L. Ed. 2d 600 (1969), *overruled on other grounds, Edelman v. Jordan*, 415 U.S. 651, 94 S. Ct. 1347, 39 L. Ed. 2d 662 (1974). Both parents, custodial and noncustodial, have the constitutional right to the care, custody, and control of their children. *Troxel v. Granville*, 530 U.S. 57, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000). In this case, Shyann challenges both the district court's decision that Braxton had a legitimate reason to move to Illinois and its decision that the move is in the children's best interests.

Relying on the Nebraska Supreme Court's instruction in *Farnsworth v. Farnsworth*, 257 Neb. 242, 597 N.W.2d 592 (1999), the district court first determined Braxton had identified a legitimate reason for removing the children to Belleville, Illinois. The court noted that Braxton had recently remarried, that Lori's employment is specialized, and that she could not obtain similar employment in Nebraska. The court further noted that Lori would earn a substantial income in Illinois. The court further noted that Braxton had been offered a position as a law enforcement officer in the Belleville area which would pay $16,000 to $20,000 more per year. Moreover, his position offered a better benefit package including family health insurance. His employment in Custer County did not provide health insurance coverage for his dependents.

We have long held that an award of custody to a parent should not be interpreted as a sentence to immobility. See, *Daniels v. Maldonado-Morin*, *supra*; *Vogel v. Vogel*, 262 Neb. 1030, 637 N.W.2d 611 (2002); *Brown v. Brown*, 260 Neb. 954, 621 N.W.2d 70 (2000); *Harder v. Harder*, 246 Neb. 945, 524 N.W.2d 325 (1994); *Sabatka v. Sabatka*, 245 Neb. 109, 511 N.W.2d 107 (1994); *Demerath v. Demerath*, 233 Neb. 222, 444 N.W.2d 325 (1989); *Hicks v. Hicks*, 223 Neb. 189, 388 N.W.2d 510 (1986); *Vanderzee v. Vanderzee*, 221 Neb. 738, 380 N.W.2d 310 (1986); *Boll v. Boll*, 219 Neb. 486, 363 N.W.2d 542 (1985); *Gottschall v. Gottschall*, 210 Neb. 679, 316 N.W.2d 610 (1982). Both the desire to form a new family unit through remarriage and the career advancement of the parent have been found to constitute legitimate reasons for leaving the state. See *Daniels v. Maldonado-Morin*, 288 Neb. 240, 847 N.W.2d 79 (2014) (stating that absent evidence of ulterior motive, courts have held that career advancement of parent, career advancement of new spouse, and desire to form new family unit through remarriage are legitimate reasons to remove child to another jurisdiction).

We find no abuse of discretion in the district court's finding. While the initial impetus for the move is Braxton's marriage to Lori, the record does reveal that Lori could not obtain

employment in Nebraska commensurate with her qualifications. The family's financial situation would be significantly improved by the move to Belleville since Lori's income is substantial. She would also be able to provide health insurance for Braxton and the children as part of her benefits package if advisable or necessary. If the family were to remain in Nebraska, Braxton would have to purchase private health insurance for his family at an estimated cost of over $1,000 in monthly premiums while he earned a salary of $54,000 per year. Braxton has also secured an offer of employment with a higher salary, better benefits, including family health insurance, and opportunities for advancement which is conditioned upon his relocation and Illinois licensure. The evidence supports the district court's finding that Braxton had a legitimate reason to remove the children to Belleville, Illinois.

## 2. BEST INTERESTS

After demonstrating a legitimate reason for leaving the state exists, the custodial parent must next show that it is in the child's best interests to continue living with him or her. See *Daniels v. Maldonado-Morin, supra*. The paramount consideration is whether the proposed move is in the best interests of the child. *Id*. We examine three broad considerations in determining whether removal to another jurisdiction is in a child's best interests: (1) each parent's motives for seeking or opposing the move; (2) the potential that the move holds for enhancing the quality of life for the child and the custodial parent; and (3) the impact such a move will have on contact between the child and the noncustodial parent, when viewed in the light of reasonable visitation arrangements. See *Brown v. Brown*, 260 Neb. 954, 621 N.W.2d 70 (2000).

### (a) Each Parent's Motives

Custody of the children was never in dispute. Braxton has been the physical custodian of the children since the original custody agreement was entered in 2017. The parties agreed custody should remain with Braxton and Shyann has not counterclaimed for custody of the children.

Braxton seeks permission to move his children to Belleville in order to live with his wife and to pursue enhanced career opportunities. These are valid motives for a move. Shyann's motives for resisting the move do not appear to be in bad faith. Her subsequent marriage and birth of a child as well as her employment and education has rooted Shyann firmly in Kearney. Given the distance between Kearney and Belleville, she is concerned about the loss of parenting time and her ability to participate in her son's lives. We believe the motives of each parent are equally balanced.

### (b) Quality of Life

In determining the potential that the removal to another jurisdiction holds for enhancing the quality of life of the child and the custodial parent, a court should evaluate the following considerations: (1) the emotional, physical, and developmental needs of the child; (2) the child's opinion or preference as to where to live; (3) the extent to which the relocating parent's income or employment will be enhanced; (4) the degree to which housing or living conditions would be improved; (5) the existence of educational advantages; (6) the quality of the relationship between the child and each parent; (7) the strength of the child's ties to the present community and extended family there; (8) the likelihood that allowing or denying the move would antagonize hostilities

between the two parties; and (9) the living conditions and employment opportunities for the custodial parent because the best interests of the child are interwoven with the well-being of the custodial parent. *Boyer v. Boyer*, 24 Neb. App. 434, 889 N.W.2d 832 (2017). This list of factors to be considered in determining the potential that the removal to another jurisdiction holds for enhancing the quality of life of the parent seeking removal and of the children should not be misconstrued as setting out a hierarchy of factors. *McLaughlin v. McLaughlin*, 264 Neb. 232, 647 N.W.2d 577 (2002). Depending on the circumstances of a particular case, any one factor or combination of factors may be variously weighted. *Id.*

We review the pertinent factors here and find no abuse of discretion in the district court's ultimate decision that on balance, the evidence supports the removal of the children to Illinois. Several factors are neutral. Neither party questioned the other's abilities to meet the emotional, physical, and developmental needs of the children. Both parents have a strong relationship with the children and there is no indication in the evidence that the children's needs would be better met in one state as opposed to the other. Braxton has provided the primary care for the children. Therefore we agree with the district court that while these factors clearly support a finding that the children should remain in the physical custody of their father, this factor does not weigh for or against removal.

The children did not testify as to preference and little evidence was presented on any educational advantages the children may enjoy in Belleville as opposed to Broken Bow. While there was testimony that allowing the move could increase hostilities between the parties due to the disappointment that would be felt by Shyann, there was no indication that such hostilities would be significant or long lasting. We agree with the findings of the district court as to neutral factors.

The district court found the following factors weighed in favor of removal: (1) the extent to which the custodial parent's income or employment would be enhanced and (2) the degree to which housing or living conditions would be improved. Assuming that Lori would return to Nebraska if removal was denied, it is highly unlikely that she could obtain employment close to Broken Bow or Kearney that would pay her a wage commensurate with what she is able to earn in Illinois. She holds a degree that can clearly provide her family with significant income, however there appear to be limited locations in which she can work in her chosen field. Moreover, Braxton secured a job in Illinois which provides significantly more income and benefits than he had in Custer County. The housing immediately available was a farmhouse on 160 acres that provides the children with more room to live and play. There was further testimony regarding Belleville's proximity to St. Louis and the many cultural and recreational activities that would be available. Based on the totality of the circumstances, the evidence does support the district court's findings as to these two factors.

We are mindful, as was the district court that at least one quality of life factor weighs against removal. The children were born in Broken Bow and nearly all of their extended family live in Nebraska. The children do enjoy close relationships with many of these family members. However, we can find no abuse of discretion in the district court's decision that on balance, the quality of life factors weigh in favor of removal.

### (c) Impact on Noncustodial Parent's Contact With Children

The third factor in the best interests determination is the impact of the move on the contact between a child and the noncustodial parent, when viewed in light of reasonable visitation arrangements. *Maranville v. Dworak*, 17 Neb. App. 245, 758 N.W.2d 70 (2008). This consideration focuses on the ability of the court to fashion a reasonable visitation schedule that will allow the noncustodial parent to maintain a meaningful parent-child relationship. *Id*. Generally, a reasonable visitation schedule is one that provides a satisfactory basis for preserving and fostering a child's relationship with the noncustodial parent. *Id*. Of course, the frequency and the total number of days of visitation and the distance traveled and expense incurred go into the calculus of determining reasonableness. *Id*. Indications of the custodial parent's willingness to comply with a modified visitation schedule also have a place in this analysis. *Id*.

There is no dispute that the move will impact Shyann's contact with the children. Belleville and Kearney are 9 hours apart. Where in the past Shyann has been able to make the short 1-hour drive to Broken Bow to see the boys' events, accompany them to an appointment, or attend a parent-teacher conference at school, she at best will only be able to participate in these activities by video link if removal is allowed. Her every other weekend visitation periods will be cut to one a month during several months of the year. While the parenting plan fashioned by the court allows her parenting time in Belleville, Kansas City, and significant holiday and summer parenting time in Kearney, there still will be a reduction in the overall quantity and frequency of in person contact that will likely impact her relationship with the boys. Therefore, we find, as did the district court that this factor weighs against removal.

### (d) Best Interests Conclusion

The district court concluded as follows:

The Father has demonstrated a legitimate reason for his request to remove the children from the State of Nebraska to Illinois. This move will enhance his family's quality of life. Although this Court understands the hardship this will place on the Mother and the affect it will have on her parenting time, it is clearly in the children's best interest to remain with their Father. Custody was not contested. The Father has been the primary caregiver and provider for the children and the children appear to be doing well. It is in the children's best interest to move with their Father and Stepmother to Illinois. The modified parenting plan will assist the Mother in maintaining a meaningful relationship with her children.

We find no abuse of discretion in the conclusion of the district court. While we sympathize with the loss that Shyann will suffer due to the greater numbers of miles separating her from her sons, we cannot ignore the many benefits they will receive by being allowed to move to Illinois given all of the factors present. We affirm the district court's decision regarding removal.

### 3. Parenting Time

Shyann argues that several deficiencies exist in the parenting plan. She first argues that the plan adopted by the court does not provide her with the regular visitation she has previously enjoyed. Her argument is correct, but given the distance that now will exist between the parties, it is impossible to grant her the same frequency of in person contact that she enjoyed when she lived

one hour away from her sons. We believe that the district court's plan is fashioned in a manner so as to promote to a maximum extent, an ability for Shyann to see her children on a regular basis. Under the plan, Shyann will have parenting time with the children for the majority of the summer. She also will have extended time with them in Kearney every Labor Day weekend, and in alternating years for Thanksgiving, Christmas, New Year's Day, and Easter. In addition, she was granted parenting time during the children's spring break every year. That parenting time can be exercised in Kearney if it exceeds 4 days, and Kansas City if not over 4 days.

In addition to the parenting time in Kearney, she was granted five weekends of parenting time per year in Kansas City which will occur in the months that she does not have parenting time in Kearney. Finally she was granted parenting time in Belleville with 2 weeks' notice and three periods per week of electronic parenting time. With one small modification, we find that the parenting time provided Shyann does allow her to maximize her time with the children despite the distance between them. Under the plan she will be able to see her children in person every month. Given the distance between the parties we cannot find the plan approved by the district court to be an abuse of discretion.

We do find that one modification to the plan should be made. Shyann argues that Braxton should be required to provide her notice of any time he plans to be visiting Nebraska with the children outside of her regular parenting time and that she should have a reasonable period of parenting time during such visits. In his testimony, Braxton agreed that he should and would provide such notice and parenting time. The court did not incorporate the parties' agreement in the parenting plan. We therefore find that the parenting plan shall be modified to require that Braxton provide Shyann 2 weeks' notice of any time he and the children will be visiting Nebraska outside of Shyann's regular parenting time and that Shyann be provided a reasonable period of parenting time during those visits.

### 4. TRANSPORTATION EXPENSES

Finally, Shyann argues that Braxton should be required to bear a larger proportion of her travel expenses associated with her parenting time. The parenting plan provides that each party shall pay their own transportation expenses and designates an exchange point when the children are to be transported by car. However, Braxton is required to pay the air fare for flights between St. Louis and Omaha for the Easter, Labor Day, and Thanksgiving holidays. If the parties agree to ground transportation on these holidays, Braxton is required to reimburse Shyann for her mileage at the standard government rate. As with other visitation determinations, the matter of travel expenses associated with visitation is initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion. *Vogel v. Vogel*, 262 Neb. 1030, 637 N.W.2d 611 (2002). As with the parenting time schedule, neither *Farnsworth* nor any other case sets an immutable standard for the allocation of travel expenses and instead the determination of reasonableness is made on a case-by-case basis. *Vogel v. Vogel, supra*.

We find no abuse of discretion in the court's division of travel costs. While Shyann notes that her family income is substantially lower than Braxton's, the record does reveal that she works nearly full time and her husband is employed. Moreover, she was nearing the end of her college education and could expect greater income following graduation. Finally, the record demonstrates

that the $50 per month Shyann currently pays in child support is significantly below what she would be required to pay based on her current income. Braxton did not seek a modification of child support in this action, however. Given these factors, we cannot find that the district court abused its discretion in its allocation of travel expenses.

## VI. CONCLUSION

We find the district court did not abuse its discretion in permitting the removal of the children to Belleville, Illinois. We further find no abuse of discretion with respect to the provisions contained in the parenting plan. We do modify the parenting plan to provide Shyann notice and parenting time when Braxton and the children are visiting Nebraska outside her regular parenting time as agreed to by the parties.

AFFIRMED AS MODIFIED.